IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Julie A. Su, Secretary of Labor, United :     Case No. 1:18-cv-590
States Department of Labor, :
:
      Plaintiff, :     Judge Susan J. Dlott
:
      v. :
:     Order Granting Motions for Default
MICA Contracting, LLC, *et al.*, :     Judgment Against Defendant MICA
:     Contracting, LLC and Defendant
      Defendants. :     Timothy Thompson; Order Granting
:     Motions to Strike

        Currently pending before the Court are Motions for Default Judgment against MICA

Contracting, LLC ("MICA") (Docs. 123, 133) and Defendant Timothy Thompson ("Thompson")

(Docs. 124, 133). Also pending are a Motion to Strike Defendant Timothy Thompson's Answer,

Counterclaims, Cross-Claims and/or Motion for a More Definitive Statement (Doc. 141) by J&E

Builders, LLC ("J&E"), Elaine Merrick ("Merrick"), and John Wayne House ("House") and a

Motion to Strike Timothy Thompson's Answer and Cross-Claim (Doc. 149) by the Secretary of

Labor of the United States Department of Labor[1] (the "Secretary").[2] For the reasons that follow,

the Court will **GRANT** the Motions for Default Judgment (Docs. 123, 124, 133) and Motions to

Strike (Doc. 141, 149).

---

[1] Current Secretary of Labor, Julie A. Su, is substituted for former Secretary of Labor, Martin J. Walsh. Fed. R. Civ. P. 25(d).

[2] Defendant Thompson has filed several other documents styled as motions and other pleadings, which, for reasons discussed *infra*, will be stricken from the record.

## I.   BACKGROUND

### A.  The Complaint

On August 21, 2018, then the Secretary of Labor[3] of the United States Department of

Labor filed this Fair Labor Standards Act ("FLSA") enforcement action against MICA, J&E,

Merrick, House, and Thompson.  (Doc. 1.)  The Secretary alleges J&E, Merrick, and House

violated Sections 6 and 15(a)(2) of the FLSA by failing to pay minimum wage to workers who

were paid through a purported subcontractor.  (*Id*. at PageID 7.)  In addition, the Secretary

alleges J&E, Merrick, House, Thompson, and MICA violated Sections 7 and 15(a)(2) of the

FLSA by employing admitted employees for more than forty hours per week without paying

overtime and by employing employees being paid through purported subcontractors for more

than forty hours per week.  (*Id*. at PageID 8.)  Finally, the Secretary alleges Defendants violated

Sections 11(c) and 15(a)(5) of the FLSA by failing to make, keep, and preserve adequate and

accurate records of their employees as required by 29 C.F.R. § 516.  (*Id*. at PageID 9.)  The

Secretary seeks injunctive relief, unpaid minimum wage and overtime compensation, liquidated

damages, pre-judgment interest, costs, and any other relief.  (*Id*. at PageID 10.)

### B.  Judgment Against Settling Defendants

On October 26, 2021, the Court denied the Motion for Summary Judgment brought by

J&E, House, and Merrick.  (Doc. 103.)  One year later, on October 28, 2022, the Court entered a

Consent Order and Judgment in which J&E, Merrick, and House (the "Settling Defendants")

agreed to an entry of liability and damages in this action.  (Doc. 120.)  The Settling Defendants

---

[3] The current Secretary of Labor is Julie A. Su, who is being substituted for the former Secretary of Labor, Martin J. Walsh pursuant to Rule 24(d).

were enjoined from violating the record-keeping provisions of the FLSA. (*Id*. at PageID 5454.)

J&E was enjoined and restrained from withholding gross back wages totaling $117,462.15 owing

to certain former employees, and Merrick and House were enjoined and restrained from

withholding gross back wages totaling $22,750.00 owing to certain former employees. (*Id*. at

PageID 5455.) Pursuant to Section 16(c) of the FLSA, liquidated damages were imposed,

rendering the total judgment amount to be paid by J&E to be $234,924.30 and the total amount

to be paid by Merrick and House to be $45,5000.00. (*Id*. at PageID 5455–5456.)

### C. Defendants MICA and Thompson Fail to Answer or Respond

MICA and Thompson, however, never entered an appearance or otherwise defended this

action. On December 31, 2018, the Clerk of Court entered an Entry of Default against MICA

pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 23.) On September 13, 2019, the

Secretary filed a Motion for Default Judgment against MICA. (Doc. 34.) The Court determined

that the proper action was to keep the entry of default against MICA in place, but to delay

judgment until the claims against the other Defendants were resolved. (Doc. 39, 44.) The

Motion was denied without prejudice to refiling. (Doc. 44.)

As to Thompson, the Court asserted that it would dismiss the case without prejudice

against Thompson within 14 days of entry of its summary judgment Order unless the Secretary

could demonstrate good cause for failure to serve him. (Doc. 103 at PageID 5382–5383 n.6.)

On November 9, 2021, the Secretary served the Summons and Complaint upon Defendant

Thompson. (Doc. 106.) On November 19, 2021, the Court issued an Order finding that the

Secretary had demonstrated good cause for failure to serve Thompson and allowing the case to

proceed against him. (Doc. 109.) After being served, Thompson failed to answer or file a

responsive pleading. On November 21, 2022, the Secretary filed an Application for Entry of

3

Default against Thompson. (Doc. 121.) On November 30, 2022, the Clerk of Court filed an Entry of Default against Thompson under Federal Rule of Civil Procedure 55(a). (Doc. 122.)

### D. Default Judgment

On February 2, 2023, the Secretary filed Motions for Default Judgment against MICA (Doc. 123) and Thompson (Doc. 124). The Secretary moves for a judgment against MICA in the amount of $132,401.90, representing unpaid overtime compensation and liquidated damages owing to its employees for the period of January 4, 2016 through February 27, 2017. (Doc. 123-1 at PageID 5474.) The Secretary moves for a judgment against Thompson in the amount of $95,093.10, representing unpaid overtime compensation and liquidated damages owing to MICA's employees for the period of January 4, 2016 through October 29, 2016. (Doc. 124-1 at PageID 5489.) The damages owed by Thompson are a subset of the full amount of damages owed by MICA.

### E. Motions to Strike

On March 24, 2023, Thompson filed a *pro se* motion seeking electronic case filing rights. (Doc. 126.) On April 5, 2023, the Court granted that Motion. (Doc. 127.) Since the Court granted Thompson electronic case filing rights approximately one month ago, Thompson and/or Bethany Marie Buch-Thompson, apparently on behalf of or with Thompson, filed eighteen filings with the Court, including an attempted Answer and counterclaim and/or crossclaim. (*See* Docs. 128–132, 134–140, 142–146, 148, 150.)

On May 3, 2023, Thompson filed a restricted document in CM/ECF labeled a "Motion for Leave" but the document itself is entitled "The Defendant's Answer to the Complaint." (Doc. 128.) This document apparently was filed again as Document 129, labeled on CM/ECF as Defendant's "Answer." (Doc. 129.) The Answer is filed by Thompson and apparent third party

4

Buch-Thompson, who is described as Thompson's "POA" and "Joiner." (Doc. 129 at PageID 5525.) Thompson has inundated this Court with subsequent filings. On May 16, 2023, J&E, Merrick, and House moved to strike Thompson's Answer, Counterclaims, and Crossclaims as well as his supplemental filings.[4] (Doc. 141.) On May 24, 2023, the Secretary also moved to strike Thompson's Answer and Crossclaim against MICA as well as his supplemental filings. (Doc. 149.)

## II. MOTIONS TO STRIKE

As an initial matter, the Court turns to the pending Motions to Strike filed by J&E, House, and Merrick (Doc. 141) and the Secretary (Doc. 149), which are well-taken. A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Mapp v. Bd. of Ed. of the City of Chattanooga, Tenn.*, 319 F.2d 571, 576 (6th Cir. 1963) (recognizing strike orders as a relatively "drastic remedy to be resorted to only when required for the purposes of justice" or "when the pleading to be stricken has no possible relation to the controversy"). Although motions to strike can "serve a useful purpose by eliminating insufficient defenses[,]" the Court should strike only defenses "so legally insufficient that it is beyond cavil that defendants could not prevail on them." *U.S. v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (citation omitted).

In his Answer, Thompson asserts that there is no evidence he was served and his address is wrong; he has a Durable Power of Attorney; the Complaint is "non-factual" and has "intentional

---

[4] At the time of moving to strike, Thompson had filed three "supplemental filings." Now, there are many more.

fraudulent misrepresentations by false statements." (*See* Doc. 128, 129;[5] Doc. 128 at PageID 5516.) He names several individuals who he attempts to join as "Multiple Other Parties, Co-Conspirators." (*Id.*) He attempts to assert claims of "perjury, forgery, deed theft, mortgage fraud, abusive tax schemes and preparing tax returns" against the "co-defendants[.]" (*Id.* at PageID 5519.) He also attempts to assert a variety of defenses the Court could not decipher. (*See, e.g., id.* at PageID 5516 ("Defendant requests all State cases, by continuing to raise federal questions and cases continue to involve diversity of citizenship, once, upon notice of removal is filed in state and federal courts.")) Thompson's responses are not numbered and are often cutoff mid-sentence; many statements involve seemingly unrelated matters or grievances, including a divorce and/or bankruptcy case.

Thompson's Answer is deficient and must be stricken. First, Thompson's Answer is untimely. Thompson failed to answer or assert his counterclaims and/or crossclaims within 21 days of being served the Complaint and Summons, and he did not file a motion seeking leave of Court to file a late Answer and counterclaims or crossclaims. (*See id.*) According to a Declaration of Service of Summons and Complaint, Thompson was served on November 9, 2021 by a process server. (*See* Doc. 106.) The process server described Thompson's physical appearance and stated that he confirmed Thompson's residence with a neighbor. (*Id.*) He also described Thompson as being evasive and confrontational, but Thompson finally admitted his identity and was served at his residence door. (*Id.*) Thompson did not undermine these facts or explain how or why he was not served on November 9, 2021. He also does not give a comprehensible explanation for why it

---

[5] Documents 128 and 129 are labeled differently in the CM-ECF system but appear to be the same document of a proposed "Answer."

has taken him approximately a year and a half since he was served to attempt to answer or assert new claims. *See* Fed. R. Civ. P. 12(a)(1).

Even if he had, the Answer fails to meet basic requirements.[6] Thompson does not include in "short and plain terms" his defenses to each claim against him nor does he specifically admit or deny the allegations asserted against him in a comprehensible way. *See* Fed. R. Civ. P. 8(b). In addition, he does not plead with particularity the circumstances constituting alleged fraud, as required by Rule 9(b). Although intended to be used sparingly, the Court finds application of Rule 12(f) to be appropriate in these circumstances. Thompson's belated Answer (Doc. 128, 129) must be stricken from the record due to being untimely and because it presents an "insufficient defense," including immaterial matter.

Thompson's supplemental filings, Documents 130–132, 134–140, 142–146, 148, and 150, will be stricken from the record for being immaterial. None of these filings are pleadings, and nearly all of them are mislabeled in the CM/ECF system. All appear to be miscellaneous documents that would typically be filed as attachments to the extent they are relevant. Yet all of these filings are irrelevant and immaterial and are not responsive to the pending Motions for Default Judgment.

To briefly summarize, Document 130 is labeled in CM/ECF as a "REDACTION" but includes a civil cover sheet and a purported General Durable Power of Attorney naming Buch-Thompson as principal of Thompson's General Durable Power of Attorney.[7] Document 131 is a

---

[6] *See* S.D. Ohio Local Rule 5.1, General Format of Documents Presented for Filing. All pleadings, motions, briefs, and other papers should be formatted to be double-spaced, have consecutively numbered pages, be prepared by a clearly legible duplication process.

[7] To the extent Thompson has a General Durable Power of Attorney, neither he nor anyone on his behalf has explained this or provided a valid Notice of Appearance by an attorney. In support of its Motion to Strike, the Secretary noted that in 2022, it was contacted by an individual named Bethany Marie Buch-Thompson who

"Diversity of Citizenship Disclosure Statement filed on behalf of Bethan M. Buch." (Doc. 131 at PageID 5544.) Document 132, filed as a "NOTICE," is an assortment of documents, seemingly including marked up copies of a docket sheet from a bankruptcy case, a tax bill, answers to interrogatories, an attorney letter, a warranty deed, and foreclosure filings.

Document 134 is labeled in CM/ECF as a "Supplemental Memorandum Supporting re Answer to Complaint" but includes irrelevant filings seemingly from a domestic relations action between Thompson and Merrick and foreclosure action against Thompson, as well as photographs of vehicles. Document 135 is labeled in CM/ECF a "RESPONSE to Motion re MOTION for Default Judgment," but includes a copy of a Decree of Divorce and other documents seemingly related to a domestic relations case.

Document 136 is labeled in CM/ECF as an "OBJECTION to Report and Recommendation," but includes a Decree of Divorce, other domestic relations filings, and photographs of vehicles. Document 137, also labeled in CM/ECF as an "OBJECTION to Report and Recommendation," includes apparent business records and a summary of Ohio wage and hour law. Labeled in CM/ECF as a "RESPONSE in Opposition to MOTION for Default Judgment," Document 138 includes marked up filings from a bankruptcy action and tax forms with commentary. Document 139, labeled in CM/ECF as an "OBJECTION to Report and Recommendation," includes apparent business documents for MICA. Document 140, labeled in CM/ECF as an "OBJECTION to Report and Recommendation," includes an attorney letter about taxes, court filings from other cases, and business documents with tabs and notes.

---

represented Thompson was incapacitated due to a brain injury. However, neither Thompson nor Buch-Thompson have provided any information about this allegation to the Court and its bearing on this litigation. (Doc. 149 at PageID 5779 n.1.)

Document 142 is labeled in CM/ECF as a "RESPONSE in Opposition re MOTION to Strike," and includes a graph, and a marked up Final Entry and Decree of Divorce from 2018. Document 143, labeled in CM/ECF as a "MOTION for Disclosure," includes notes of an apparent medical visit.  Document 144, labeled in CM/ECF as a "Reply," is a photograph of a cat. Document 145, also labeled a "Reply" in CM/ECF, is a Certificate of Judgment in an unrelated action and a photograph of a helicopter.  Document 146, labeled in CM/ECF as "Preponderance of 'the' Evidence ANSWER," appears to be screen shots of text messages.  Document 148, labeled in CM/ECF as a "Final PETITION to Enforce IRS Summons," includes attachments of bankruptcy filings.  Document 150, labeled in CM/ECF as a "Reply," includes legal correspondence, documents from a foreclosure action, and a Diversity of Citizenship Disclosure Statement signed by Buch-Thompson.

In sum, Thompson's confusing and voluminous filings are untimely, irrelevant, and immaterial.  Both Defendants and the Court have spent unnecessary time and resources reviewing these filings.  Although the Court generally disfavors striking documents from the record, in this instance, it is appropriate.  As such, the Motions to Strike are well-taken and are **GRANTED**.[8] **Documents 128–132, 134–140, 142–146, 148, and 150 are STRICKEN FROM THE RECORD**.

### III.   DEFAULT JUDGMENT

#### A.  Motions for Default Judgment

The Court now turns to the two pending Motions for Default Judgment.  The Secretary seeks default judgment against both Thompson and MICA.  (Docs. 123, 124, 133, 147.)  The

---

[8] Additional filings were entered by Thompson after the Motions to Strike were filed.  The Court will strike all cited immaterial filings, as discussed herein.

Secretary moves the Court to enter an injunction against MICA, permanently enjoining it from violating the provisions of Sections 7, 11(c), and 15(a)(2) and 15(a)(5) of the FLSA, and an injunction against Thompson, permanently enjoining him from violating Sections 7, 11(c), and 15(a)(5) of the FLSA.  (Docs. 123-1, 124-1, 133.)  The Secretary also moves the Court to enter a judgment against MICA in the amount of $132,401.90, representing unpaid overtime compensation and liquidated damages owing to MICA's employees for the period of January 4, 2016 through February 27, 2017, and a judgment against Thompson in the amount of $95,093.10, representing unpaid overtime compensation and liquidated damages owing to MICA's employees for the period of January 4, 2016 through October 29, 2016 for the period in which he was an "employer" of MICA.  (Docs. 123-1; 124-1, 133.)

In support of its Motions, the Secretary filed Declarations by Assistant District Director of the Wage and Hour Division of the Department of Labor, Nikolai S. Bogomolov (Docs. 123-2, 123-3, 124-2, 134-3, 125-1), a Supplemental Motion (Doc. 133) supported by a longer Declaration by Bogomolov (Doc. 133-2, 133-3), and a Reply (Doc. 147).  Neither party responded in opposition.[9]  For the reasons that follow, the Motions for Default Judgment will be **GRANTED**.

### B.  STANDARD OF LAW

Rule 55(b) provides:

(b) Entering a Default Judgment.

(1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and

---

[9] As discussed, Thompson filed 18 irrelevant and immaterial documents, now stricken from the record, but none of them were responsive to the Motions for Default Judgment pending against him or MICA.

costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Fed. R. Civ. P. 55.  Pursuant to Rule 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."

"[A]fter entry of default, the decision to grant a default judgment is within the Court's discretion."  *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013).  An entry of default "conclusively establishes every factual predicate of a claim for relief."  *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007).  That is, the well-pleaded allegations of fact establishing liability are taken as true following an entry of default.  *See Hawkins v. Franklin Cnty. Sheriff's Off.*, No. 2:13-CV-186, 2015 WL 1647033, at *2 (S.D. Ohio Apr. 14, 2015); *Williams v. Rudin*, No. 1:11-CV-01103, 2012 WL 3562134, at *1 (W.D. Tenn. July 31, 2012), *report and recommendation adopted*, 2012 WL 3562106 (W.D. Tenn. Aug. 16, 2012).

Allegations regarding the amount of damages must be proven with evidence through detailed affidavits, documentary evidence, or at an evidentiary hearing.  *Proampac Holdings, Inc. v. First Source, LLC*, No. 1:20-cv-417, 2021 WL 2334288, at *1 (S.D. Ohio June 8, 2021);

11

*see also Vesligaj v. Peterson*, 331 F. App'x 351, 354–355 (6th Cir. 2009) (stating that an evidentiary hearing is allowed, but not required, by Rule 55(b)(2) and finding no abuse of discretion to rely upon a sworn declaration to provide the evidentiary basis for calculating unpaid wages and prejudgment interest). "An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it." *Truex v. Drivers Direct, LLC*, No. 1:21-CV-01343, 583 F. Supp. 3d 1033, 1035 (N.D. Ohio Feb. 4, 2022).

### C. Claims

The well-pleaded allegations of the Complaint, taken as true, establish the factual predicate of the Secretary's claims for relief for overtime violations and record keeping violations. Section 7 of the FLSA requires that an employer pay a rate of not less than "one and one-half times the regular rate" for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1). "Under the FLSA, only employees are entitled to overtime and minimum wage compensation." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). Independent contractors, on the other hand, "do not enjoy FLSA's protections." *Id.* "Employees" are defined as "any individual[s] employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id*. at § 203(d). The term "employ" is defined as "to suffer or permit to work." *Id*. at § 203(g). "These are wide-ranging definitions; indeed, the Supreme Court has stated that '[a] broader or more comprehensive coverage of employees . . . would be difficult to frame.'" *Acosta v. Cathedral Buffet*, 887 F.3d 761, 765 (6th Cir. 2018) (citing *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945)). "The statutory language 'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'" *Id*. (citing *Mendel v. City of Gibraltar*, 727 F.3d 565, 569 (6th Cir. 2013)).

Courts in the Sixth Circuit consider an employee under the FLSA to be a worker who, as a matter of "economic reality," is dependent upon the business to which he or she renders service as determined by the following factors: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Keller*, 781 F.3d at 807 (citing *Donovan v. Brandel*, 736 F.2d 1114, 1117 & n.5 (6th Cir. 1984)). Courts have also considered the company's authority to hire or fire the worker and whether the company maintained the worker's employment records. *Id.* (citing *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012)). "None of these factors is determinative on its own, and each must be considered with an eye toward the ultimate question—the workers' economic dependence on or independence from the alleged employer." *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (*quoting Keller,* 781 F.3d at 807) (internal citations removed)).

An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991), *superseded by rule on other grounds*, *M.J. v. Akron City Sch. Bd. of Ed*., 1 F.4th 436 (6th Cir. June 15, 2021) (quoting *Falk v. Brennan,* 414 U.S. 190, 195 (1973)). In deciding whether a party is an employer, the "economic reality" controls. *Id.* (citing *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33 (1961)). Whether a party is an employer within the meaning of the FLSA is a legal determination. *Id.*

Relevant to whether Thompson is an "employer," "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id*. (quoting *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)). "In *Agnew,* the court determined that corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment were employers under the FLSA." *Id*. (quoting *Agnew*, 712 F.2d at 1514 (internal quotations removed)). "No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer employee relationship and assess the economic realities presented by the facts of each case." *Id*. (citing *Donovan v. Sabine Irrigation Co*., 695 F.2d 190, 195 (5th Cir. 1983) (whether party is employer is question of fact), *cert. denied*, 463 U.S. 1207 (1983)). A party need only have "operational control of significant aspects of the corporation's day to day functions" as opposed to exclusive control of those functions in order to be considered an employer as a matter of economic reality. *Id.* at 966. Under this test, the Court looks to the circumstances of the business as a whole, including the following non-exhaustive and non-dispositive factors:

> (1) whether the plaintiff is an integral part of the operations of the putative employer;
> (2) the extent of the plaintiff's economic dependence on the defendants;
> (3) the defendant's substantial control of the terms and conditions of the work of the plaintiff;
> (4) the defendant's authority to hire or fire the plaintiff; and
> (5) whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment.

*Miller v. Food Concepts Int'l, LP,* No. 2:13-CV-00124, 2017 WL 1163850, at *27 (S.D. Ohio

Mar. 29, 2017) (citing *Ellington v. City of East Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012));

*see also Clark v. Shop24 Global, LLC*, 77 F. Supp. 3d 660, 689 (S.D. Ohio 2015).

From January 4, 2016 through February 27, 2017 (the "relevant period"), MICA was a

corporation organized under the laws of Ohio with a registered primary place of business at 8711

Reading Road, Cincinnati, Ohio 45215 in Hamilton County. (Doc. 1, at PageID 2.) Thereafter,

it had a primary place of business of 912 Woodlyn Drive North, Cincinnati, Ohio 45230 in

Hamilton County. (*Id*. at PageID 2–3.) During the relevant period, MICA was an enterprise

engaged in commerce because its employees were handling and/or working with goods or

materials that were moved in interstate commerce, and MICA had annual gross volume of sales

made or business done of more than $500,000 each calendar year. (*Id*. at PageID 5–6;

Bogomolov Decl., Doc. 133-2 at PageID 5578); *See* 29 U.S.C. § 203(r); (s).[10]

Thompson was an employer under 29 U.S.C. § 203(d) of the FLSA between January 6,

2016 to October 29, 2016, because during that time, he actively supervised the day-to-day

---

[10] Under 29 U.S.C. § 203(r)(1), "[e]nterprise" is defined as:

> the related activities performed (either through unified operation or common control) by any
> person or persons for a common business purpose, and includes all such activities whether
> performed in one or more establishments or by one or more corporate or other organizational units
> including departments of an establishment operated through leasing arrangements, but shall not
> include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. § 203(r)(1). Pursuant to 29 U.S.C. § 203(s)(1), "Enterprise engaged in commerce or in the production of
goods for commerce" means an enterprise that—

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that
> has employees handling, selling, or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than
> $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C. § 209(s)(1)(A)(i)–(ii).

operations and management of MICA in relation to its employees, including by determining

employees' compensation, schedules, and responsibilities.  (Doc. 1 at PageID 3–4; Bogomolov

Decl., Doc. 133-2 at PageID 5578); *See* 29 U.S.C. § 203(d).  Thompson acted directly or

indirectly in the interest of MICA in relation to its employees.  (*Id*.)  During the relevant period

prior to the end of Thompson's work relationship with MICA, all of MICA's employees were

also employees of Thompson.  (Bogomolov Decl., Doc. 133-2 at PageID 5578.)

During the relevant period, MICA admits that about one-third of its workers were

employees ("admitted employees").  On each biweekly pay cycle, MICA would cut the overtime

hours worked by the admitted employees by approximately one-third. (Doc. 1 at PageID 8.)  For

example, if an employee worked 80 regular hours and 36 overtime hours, for a total of 116 hours

over two weeks, Defendants would pay the employee for 80 regular hours and 24 overtime

hours, a total of 104 hours over two weeks.  (*Id*.)  This made it appear as if Defendants were

paying admitted employees overtime premium, when in reality they were paying the equivalent

of straight time worked.  (*Id*.)  As a result, MICA did not pay premium wages for hours worked

in excess of forty hours in a workweek, which violates Section 7 of the FLSA, 29 U.S.C. §§ 207,

215(a)(2).  (*Id.*)

During the relevant period of January 4, 2016 through February 27, 2017, MICA

misclassified the remaining two-thirds of workers under its control as independent contractors.

Most of those alleged independent contractors were paid through purported subcontractors that

were subservient to MICA, including Jimenez Construction, Inc.  (Doc. 1 at PageID 8; Doc.

133-2 at PageID 5579.)  MICA and Thompson, through its foremen, exercised substantial control

and supervision over the purported subcontractors, including directing and assigning their work

and determining where they worked, when they started work, stopped work, and took breaks.

(Doc. 133-2 at PageID 5579.)  The purported subcontractors were paid on an hourly basis.  (*Id.*)

Purported subcontractors worked for MICA for three-to-four-month periods, working forty to

fifty hours per week, thus leaving little or no time to seek other employment.  (*Id*. at PageID

5580.)  These practices resulted in MICA and Thompson not paying premium wages for hours

worked in excess of forty hours in a workweek, in violation of Sections 7 and 15(a)(2) of the

FLSA, 29 U.S.C. §§ 207, 215(a)(2).

MICA and Thompson also failed to make, keep, and preserve adequate and accurate

records of their employees and the wages, hours, and other conditions and practices of

employment as prescribed by the FLSA.  29 C.F.R. § 516; 29 U.S.C. 211(c); 29 U.S.C. §

215(a)(5).  MICA did not keep accurate employment records for the entirety of the period of the

investigation.  (Bogomolov Dec., Doc. 133-2 at PageID 5580.)

Thus, based on the well-pled Complaint allegations, which have been supported by the

Declarations of Bogomolov, both Thompson and MICA violated the overtime and recordkeeping

provisions of the FLSA.

### D.  Damages

The Secretary seeks a judgment against MICA in the amount of $132,401.90,

representing unpaid overtime compensation and liquidated damages due to its employees for the

period of January 4, 2016 through February 27, 2017, and a judgment against Thompson in the

amount of $95,093.10, representing unpaid overtime compensation and liquidated damages due

to his employees for the period of January 4, 2016 through October 29, 2016.  (Docs. 123-1; 124,

125-1, 133.)

Under 29 U.S.C. § 216(c), the Secretary of Labor may recover wages and damages,

including liquidated damages, which automatically terminates the right of the individual

employee to sue for wages covered by the Secretary's suit, to be held in a special deposit account and paid directly to the employees. 29 U.S.C. § 216(c). "Although liquidated damages are the norm and have even been referred to as '*mandatory*,' *see, e.g., Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3rd Cir.1991) (emphasis in original), Congress has provided the courts with some discretion to limit or deny liquidated damages." *Martin v. Ind. Mich. Power Co*., 381 F.3d 574, 584 (6th Cir. 2004); *see also* 29 U.S.C. § 260; *Martin,* 940 F.2d at 907. "Under this exception, if an employer demonstrates *both* good faith and reasonable grounds for the incorrect classification, then a court may exercise its discretion to limit or deny liquidated damages." *Id*. (emphasis in original). However, the burden on the employer is "substantial." *Id.*

Bogomolov submitted three Declarations detailing his damages calculations. (Doc. 123-2, 125-1, 133-2.) In support of his damages calculations, he relies upon a chart, "Exhibit A" to his Declaration, which lists admitted employees, employees paid as independent contractors directly by MICA, and employees paid as independent contractors through Jimenez Construction, LLC. Next to each individual, the chart includes the period of employment time covered, back wages due, liquidated damages, and a total amount due. (Doc. 133-3.)

Bogomolov attests that he investigated MICA's FLSA compliance for the relevant period. (Doc. 133-2 at PageID 5577.) Based on his investigation, he determines that MICA owes 29 admitted employees $35,547.63 in overtime back wages earned during the relevant period. (*Id.* at PageID 5579.) He calculates that MICA owes 25 misclassified independent contractors $30,653.32 in overtime back wages during the relevant period. (*Id.* at PageID 5580.) This is a total of 54 employees owed a total of $66,200.95 and an equal amount of liquidated damages, for a total of $132.401.90. (*Id*.)

Bogomolov determined that the back wages attributable to Thompson are less than what are attributable to MICA, because Thompson ceased his involvement in MICA on October 29, 2016.  (*Id.*)  He found that MICA and Thompson owe 28 admitted employees $23,379.64 and 23 misclassified independent contractors $23,185.91 in overtime back wages for the period of Thompson's involvement in MICA.  (Doc. 125-1 at PageID 5508.)  Pursuant to Bogomolov's calculations, Thompson therefore owes a total of 51 employees $47,546.55 in back wages plus an equal amount in liquidated damages for a total of $95,093.10.  (*Id.*)

The Court is satisfied that Bogomolov's Declarations and accompanying calculations are sufficient, such that an evidentiary hearing on damages is not needed.  Given the procedural posture of this case, there is no evidence that MICA or Thompson acted in good faith or had reasonable grounds for believing their pay practices complied with the FLSA, as they have not meaningfully participated in this litigation.  Thus, liquidated damages are warranted.

Lastly, pursuant to 29 U.S.C. § 217, the Court "shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the  case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter."  Because of the established FLSA violations, the Court finds that injunctive relief is appropriate.

## IV.    CONCLUSION

For the reasons set forth herein, the Court **GRANTS** the Motions to Strike (Docs. 141, 149) and **STRIKES Documents 128–132, 134–140, 142–146, 148, and 150**.

The Court **GRANTS** the Motions for Default Judgment against Thompson and MICA (Docs. 123, 124, 133). It is **ORDERED**: MICA is liable for the payment of back wage compensation under Section 16(c) of the Act in the amount of $132,401.90 representing unpaid

overtime compensation and liquidated damages owing to MICA's employees for the period of January 4, 2016 through February 27, 2017 as set forth in Exhibit A (Doc. 133-3) and attached to this Order. Of that amount owing by MICA, Defendant Thompson is jointly and severally liable as an employer of MICA for the payment of back wage compensation under Section 16(c) of the Act in the amount of $95,093.10, which represents unpaid overtime compensation and liquidated damages owing to MICA and Thompson's employees for the period of January 4, 2016 through October 29, 2016 as set forth in Exhibit A (Doc. 133-3) and attached to this Order.

The Secretary shall distribute the wages, less any appropriate deductions for social security, federal income tax, and state income tax, to the employees or former employees listed in Exhibit A, or to their estates, if necessary. MICA and/or Thompson shall be responsible for the employer's share of FICA, Medicare and other applicable taxes and any other necessary payments to the appropriate federal and state revenue authorities. Any sums not distributed to the employees or former employees on Exhibit A, or to their estates, because of inability to locate the proper persons or because of such persons' refusal to accept such sums, shall be deposited with the Treasurer of the United States pursuant to 29 U.S.C § 216(c).

MICA and Thompson, their agents, servants, employees, and all persons acting or claiming to act on their behalf and interest shall be, and hereby are, permanently enjoined and restrained from withholding the payment of back wages to the individuals listed in Exhibit A.

MICA and Thompson, their agents, servants, employees, and all persons acting or claiming to act on their behalf and interest shall be, and hereby are, permanently enjoined and restrained from violating the provisions of Sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Act in the following manner.

MICA and Thompson shall not, contrary to Sections 7 and 15(a)(2) of the Act, employ any of their employees engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined by the FLSA, for workweeks longer than those prescribed by Section 7 of the Act, unless the employees receive compensation for their employment in excess of the maximum hours prescribed by the aforesaid sections at rates not less than one and one-half times the regular rates at which they are employed.

MICA and Thompson shall not, contrary to Sections 11(c) and 15(a)(5) of the Act, fail to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment they maintain.

**IT IS SO ORDERED.**

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court